No. 22-35314

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CENTER FOR BIOLOGICAL DIVERSITY,
*Plaintiff/Appellee*,

v.

UNITED STATES FISH AND WILDLIFE SERVICE, et al.,
*Defendants/Appellees*,

and

SAFARI CLUB INTERNATIONAL, the NATIONAL RIFLE ASSOCIATION
OF AMERICA, SPORTSMEN'S ALLIANCE FOUNDATION, and the ROCKY
MOUNTAIN ELK FOUNDATION,
*Proposed Defendants-Intervenors-Appellants*.

_____

Appeal from the United States District Court for the District of Montana
No. 9:21-cv-00144-DWM (Hon. Donald Molloy)

_____

**FEDERAL APPELLEES' ANSWERING BRIEF**

_____

TODD KIM
*Assistant Attorney General*
ANDREW C. MERGEN
ANDREW M. BERNIE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
(202) 514-4010
andrew.m.bernie@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY ....................................................................................... viii

INTRODUCTION .................................................................................1

STATEMENT OF JURISDICTION..........................................................4

STATEMENT OF THE ISSUE.................................................................5

PERTINENT LEGAL PROVISIONS .......................................................5

STATEMENT OF THE CASE..................................................................6

     A.     Statutory and regulatory background .....................................6

     B.     The challenged 2020 Rule....................................................9

     C.     Initial proceedings below and the district court's decision.................10

     D.     Subsequent developments ..................................................15

SUMMARY OF ARGUMENT ...............................................................17

STANDARD OF REVIEW ...................................................................20

ARGUMENT .....................................................................................20

I.     Proposed Intervenors are not entitled to intervene in this stayed
and likely soon to be settled case..................................................21

     A.     Proposed Intervenors lack a protectable interest in the
settlement process..............................................................21

     B.     Any settlement between the preexisting parties would not
impair Proposed Intervenors' ability to protect their
asserted interests in the Rule. .............................................24

II.    Proposed Intervenors failed to show that the United States
       would not adequately represent their interests in the Rule if the
       case is litigated..............................................................................28

       A.     To warrant intervention, Proposed Intervenors must
              identify a specific and persuasive reason the Service may
              not adequately defend the Rule. ...........................................30

       B.     Proposed Intervenors do not identify any case-specific
              reason the Service may not adequately defend the Rule....................39

       C.     The Service is not required to demonstrate that it will
              make all of Proposed Intervenors' particular preferred
              arguments if the case is litigated. ........................................42

CONCLUSION ...........................................................................................46

STATEMENT OF RELATED CASES ...................................................48

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Defense Fund v. Otter*,
   300 F.R.D. 461 (D. Idaho 2014) ........................................................44

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ...........................................................31

*Baltimore Gas & Electric Co. v. NRDC, Inc.*,
   462 U.S. 87 (1983) ...............................................................................7

*Berger v. North Carolina State Conference of the NAACP*,
   142 S. Ct. 2191 (2022) .......................................................................32

*California v. Health & Human Services*,
   2017 WL 6731640 (N.D. Cal. Dec. 29, 2017) ............................. 43, 45

*Citizens for Balanced Use v. Montana Wilderness Association*,
   647 F.3d 893 (9th Cir. 2011) ................................ 13, 20, 33, 42, 45, 46

*Consumer Energy Council of America v. FERC*,
   673 F.2d 425 (D.C. Cir. 1982) ...........................................................24

*CVLR Performance Horses, Inc. v. Wynne*,
   792 F.3d 469 (4th Cir. 2015) .............................................................17

*Department of Commerce v. New York*,
   139 S. Ct. 2551 (2019) .......................................................................41

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ...........................................................35

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ....................................................... 21, 27

*DOT v. Public Citizen*,
   541 U.S. 752 (2004) ..........................................................................7, 8

*Forest Conservation Council v. U.S. Forest Service*,
   66 F.3d 1489 (9th Cir. 1995) .............................................................34

*Frank v. Gaos,*
    139 S. Ct. 1041 (2019) ........................................................................22

*Freedom from Religion Foundation, Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ..............................................................30

*Friends of Santa Clara River v. U.S. Army Corps of Engineers,*
    887 F.3d 906 (9th Cir. 2018) ................................................................9

*Harris v. Pernsley,*
    820 F.2d 592 (3d Cir. 1987)................................................................23

*Idaho Farm Bureau Federation v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ..............................................................39

*In re Sierra Club,*
    945 F.2d 776 (4th Cir. 1991) ..............................................................35

*Jenkins ex rel. Jenkins v. State of Missouri,*
    78 F.3d 1270 (8th Cir. 1996) ..............................................................44

*Kleissler v. U.S. Forest Service,*
    157 F.3d 964 (3d Cir. 1998)................................................................35

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ............................................................31

*Legal Aid Society of Alameda Company v. Dunlop,*
    618 F.2d 48 (9th Cir. 1980) ................................................................34

*Local No. 93, International Association of Firefighters, AFL–CIO v. City of Cleveland,*
    478 U.S. 501 (1986)............................................................................22

*North Dakota ex rel. Stenehjem v. United States,*
    787 F.3d 918 (8th Cir. 2015) ..............................................................43

*Perez v. Mortgage Bankers Association,*
    575 U.S. 92 (2015)..............................................................................24

*Perry v. Proposition 8 Official Proponents,*
    587 F.3d 947 (9th Cir. 2009) ..............................................................43

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) .................................................................31

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989)...............................................................................7

*San Francisco Baykeeper v. U.S. Fish & Wildlife Service*,
   2021 WL 3426961 (N.D. Cal. Aug. 5, 2021) ............................... 14, 25

*San Luis & Delta-Mendota Water Authority v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) .................................................................36

*Sokaogon Chippewa Community. v. Babbitt*,
   214 F.3d 941 (7th Cir. 2000) .................................................................25

*Southern California Edison Co. v. Lynch*,
   307 F.3d 794 (9th Cir. 2002) .................................................................22

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ........................................................ 27, 34, 45

*State v. U.S. Fish & Wildlife Service*,
   262 F.3d 13 (1st Cir. 2001)....................................................................28

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987)................................................................................4

*Training Associates, Inc. v. Buccaneers Ltd. Partnership*,
   874 F.3d 692 (11th Cir. 2017) ...............................................................23

*U.S. v. City of New York*,
   198 F.3d 360 (2nd Cir. 1999).................................................................44

*U.S. v. Union Electric Co.*,
   64 F.3d 1152 (8th Cir. 1995) .................................................................28

*United States v. Territory of Virgin Islands*,
   748 F.3d 514 (3d Cir. 2014)...................................................................44

*Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale
   Electric Co.*,
   922 F.2d 92 (9th Cir. 1990) ...................................................................23

*Wilderness Society v. U.S. Forest Service*,
  630 F.3d 1173 (9th Cir. 2011) ...................................................34

*Yazzie v. Hobbs*,
  2020 WL 8181703 (D. Ariz. Sept. 16, 2020) ..........................36

## Statutes and Court Rules

5 U.S.C. § 702 ...........................................................................4

16 U.S.C. §§ 668dd-668ee ....................................................6, 7

16 U.S.C. § 668dd(a)(2) ...........................................................6

16 U.S.C. § 668dd(a)(4)(A) .......................................................6

16 U.S.C. § 668dd(a)(4)(B) .......................................................6

16 U.S.C. § 668dd(a)(4)(F)-(G) .................................................6

16 U.S.C. § 668dd(a)(4)(K) .......................................................7

16 U.S.C. § 668dd(a)(4)(N) .......................................................7

16 U.S.C. § 1536(a)(2) ..............................................................8

16 U.S.C. § 1540(g)(1)(A) .........................................................4

28 U.S.C. § 1291 .......................................................................4

28 U.S.C. § 1331 .......................................................................4

42 U.S.C. § 4332(2)(C) .............................................................7

Fed. R. Civ. P. 24(a) ...............................................................12

Fed. R. Civ. P. 24(a)(2) .......................................... 2, 17, 21, 27

Fed. R. Civ. P. 24(b) ...............................................................13

Fed. R. Civ. P. 41(1)(A)(ii) .....................................................23

## Regulations and Administrative Materials

40 C.F.R. § 1501.4(a) ................................................................8

40 C.F.R. § 1501.5 ....................................................................8

50 C.F.R. § 402.02 ..................................................................10

50 C.F.R. § 402.13 .................................................................8, 9

50 C.F.R. § 402.14(b)(1) ...........................................................8

50 C.F.R. § 402.14(c)(4) ..........................................................10

87 Fed. Reg. 35,136 (Jun. 9, 2022). .......................................15

85 Fed. Reg. 54,076 (Aug. 31, 2020) ................................. 9, 10

85 Fed. Reg. 20,030 (Apr. 9, 2020). .........................................9

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CBD | Center for Biological Diversity |
| ESA | Endangered Species Act |
| NEPA | National Environmental Policy Act |

## INTRODUCTION

This appeal concerns an attempt by various groups (Proposed Intervenors) to intervene as defendants in a lawsuit challenging a U.S. Fish and Wildlife Service (Service[1]) rule expanding hunting and fishing access on certain Refuges and National Fish Hatchery System units (the Rule). The Center for Biological Diversity (CBD) filed the lawsuit in November 2021, but the district court stayed the case shortly thereafter at the parties' request while the Service and CBD pursue settlement discussions. This is not a class action, so any agreement the parties reach would not bind Proposed Intervenors, and Proposed Intervenors could not prevent the settlement even if they were granted intervention. Nor could a settlement agreement itself affect any rights Proposed Intervenors have under the Rule—the Service could not change the Rule except by issuing a new proposed rule (on which Proposed Intervenors could comment) and then a final rule (on which they could sue).

Proposed Intervenors nonetheless did not wait to see how the settlement talks played out and instead attempted to intervene in the case after it was stayed. The district court denied intervention. Proposed Intervenors appealed soon thereafter, filing and then withdrawing a motion to expedite the appeal. They then filed their opening brief in this appeal, which barely mentions the ongoing settlement

---

[1] We refer to Federal Defendants/Appellees collectively as the Service or the United States.

discussions, instead arguing entirely that intervention is necessary so that Proposed Intervenors can defend the Rule from being vacated following litigation.

That hypothetical litigation is now even less likely to occur. The parties have reached a tentative agreement in principle which they are now working to formalize. By the time the Court hears this appeal then, the underlying case may have settled— which would not only confirm that this appeal lacks merit, but would also at least raise a serious question whether the appeal is moot.

But if the Court does wind up deciding this appeal, it should affirm the district court's denial of intervention as of right. When the district court denied intervention, no litigation activity had occurred—the case was stayed, the parties were hopeful it would settle, and the Service had not even answered the Complaint. In this context, the district court correctly concluded that Proposed Intervenors did not have a significant protectable interest in the action. The law is clear that Proposed Intervenors would not be entitled to participate in settlement discussions or prevent a settlement even if they were granted party status. And a settlement also would not impede Proposed Intervenors' ability to protect their interests because, as the district court noted, Proposed Intervenors would be able to comment on any proposed replacement rule or challenge any such rule in court if and when it is finalized, which are the same rights they would have absent a settlement. As "a practical matter" then, *see* Fed. R. Civ. P. 24(a)(2), the disposition of this action that is actually likely

(i.e., by settlement) would not impair or impede Proposed Intervenors' ability to protect their interests in the Rule. And if the settlement talks do unexpectedly fail and the case moves forward, Proposed Intervenors could of course refile their intervention motion, at which point the district court would reconsider the intervention issue based on the stage of the litigation at that time.

But even if this Court were to analyze the intervention issue on the premise that the case will be litigated, intervention was also properly denied because Proposed Intervenors failed to show that the Service would not adequately represent their interests in defending the Rule. Unlike the case law on which they rely, Proposed Intervenors do not identify any conflict or other reason of the sort that would prevent the Service from vigorously defending its own Rule if the case goes forward. Proposed Intervenors instead primarily assert that they need only show that they offer a "perspective" that is different than the United States' perspective, and that there is a theoretical possibility that the United States might not make all of the arguments they would like to make.

This Court's case law on intervention as of right does not support either of these sweeping propositions. And Proposed Intervenors do not supply any necessary element that is otherwise missing from this case, which involves legal claims that would be reviewed—if at all—on the basis of the administrative record. Indeed, although Proposed Intervenors speculate that the Service would not make the

arguments they wish to advance, the arguments they identified below—principally concerning jurisdictional issues such as CBD's alleged lack of standing—are the types of arguments the United States routinely makes (and has a strong incentive to make) when those arguments are meritorious.

The district court's order denying intervention as of right should be affirmed.

## STATEMENT OF JURISDICTION

(a)    CBD invoked[2] the district court's subject matter jurisdiction under 28 U.S.C. § 1331, the Endangered Species Act's citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A), and the Administrative Procedure Act (APA), 5 U.S.C. § 702. *See* Appellants' Excerpts of Record (ER)-124.

(b)    This Court has jurisdiction over an order denying intervention as of right under 28 U.S.C. § 1291. *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987).[3]

---

[2] Proposed Intervenors state that the district court had jurisdiction, *see* Br. at 2, even though most of the arguments they wanted to make below concerned CBD's alleged lack of standing (although Proposed Intervenors' proposed motion to dismiss in the district court appeared to argue that CBD lacked standing only in part), *see infra* p. 37.  Because CBD's standing is not relevant to this appeal, we do not address it here.

[3] Proposed Intervenors did not appeal the district court's denial of permissive intervention.

4

(c)    The district court denied intervention on April 6, 2022.    ER-9.
Proposed Intervenors filed their notice of appeal on April 15, 2022.    ER-4.    The
appeal is timely.

## STATEMENT OF THE ISSUE

Whether the district court correctly denied intervention, where Proposed
Intervenors have no right to shape any settlement between the existing parties and
the likely disposition of this action (via settlement) would not "as a practical matter"
affect their ability to defend their legal interests, and where Proposed Intervenors
have provided no basis for believing that the United States would inadequately
defend the Rule if the litigation unexpectedly goes forward.

## PERTINENT LEGAL PROVISIONS

Rule 24(a) of the Federal Rules of Civil Procedure provides in relevant part:

> **(a) Intervention of Right.** On timely motion, the court must
> permit anyone to intervene who:
>
> > **(1)** is given an unconditional right to intervene by a federal
> > statute; or
> >
> > **(2)** claims an interest relating to the property or transaction
> > that is the subject of the action, and is so situated that
> > disposing of the action may as a practical matter impair
> > or impede the movant's ability to protect its interest,
> > unless existing parties adequately represent that interest.
>
> > . . . .

5

## STATEMENT OF THE CASE

### A.  Statutory and regulatory background

#### 1.  The National Wildlife Refuge System

The National Wildlife Refuge System is "a national network of lands and waters [administered] for the conservation, management, and where appropriate, restoration of the fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans."  16 U.S.C. § 668dd(a)(2).  Unlike other multiple-use public lands, lands within the National Wildlife Refuge System are closed to all public uses unless specifically and legally opened.

The National Wildlife Refuge System Administration Act of 1966, as amended by the National Wildlife Refuge System Improvement Act of 1997, 16 U.S.C. §§ 668dd-668ee, governs the administration and public use of refuges.  In administering the National Wildlife Refuge System, the Service is required, among other things, to "provide for the conservation of fish, wildlife, and plants, and their habitats within the System," *id.* § 668dd(a)(4)(A), ensure the maintenance of the System's biological integrity, diversity, and environmental health, *id.* § 668dd(a)(4)(B), ensure coordination among States and adjoining private landowners, *id.* § 668dd(a)(4)(A), assist in acquiring sufficient and appropriate water for the Refuges, *id.* § 668dd(a)(4)(F)-(G), and monitor the status of fish,

6

wildlife, and plants in each Refuge, *id.* § 668dd(a)(4)(N). The statute also directs Interior to provide opportunities "to safely engage in traditional outdoor activities, such as fishing and hunting." *Id.* § 668dd(a)(4)(K).

Consistent with these provisions, each year the Service reviews sport hunting and fishing regulation on the Refuges and determines whether to expand, contract, or otherwise modify hunting and fishing programs at individual stations. The Rule at issue in this litigation—"2020-2021 Station-Specific Hunting and Sport Fishing Regulations"—is the Service's annual rule describing changes made in 2020 to hunting and fishing on the National Wildlife Refuge System.

### 2. National Environmental Policy Act

The National Environmental Policy Act (NEPA) serves the dual purpose of ensuring that federal agencies "consider every significant aspect of the environmental impact of a proposed action" and "inform the public" of their analysis. *Baltimore Gas & Electric Co. v. NRDC, Inc.*, 462 U.S. 87, 97 (1983); *see also DOT v. Public Citizen*, 541 U.S. 752, 768 (2004). NEPA requires no particular results—only a process to ensure that federal decision-makers consider a proposed action's potential environmental consequences. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

NEPA requires a comprehensive Environmental Impact Statement (EIS) for "major Federal actions" expected to "significantly affect[] the quality of the human

environment." 42 U.S.C. § 4332(2)(C). To determine whether a proposed action will have significant effects, an agency may prepare an Environmental Assessment (EA). 40 C.F.R. § 1501.5. An EA is a "concise public document" that "briefly provides sufficient evidence and analysis for determining whether to prepare an" EIS. *Public Citizen*, 541 U.S. at 757 (cleaned up). Finally, agencies may also identify categorical exclusions, which are "categories of actions that normally do not have a significant effect on the human environment, and therefore do not require preparation of an environmental assessment or environmental impact statement." 40 C.F.R. § 1501.4(a).

### 3. Endangered Species Act

Section 7(a)(2) of the ESA requires each federal agency, "in consultation with" the relevant Service (either the Service or the National Marine Fisheries Service), to "insure that any action authorized, funded, or carried out" by the agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). If the agency determines that its action "may affect" endangered or threatened species (listed species), it must pursue either informal or formal consultation with, depending on the species, either the Service or the National Marine Fisheries Service. 50 C.F.R. §§ 402.13, 402.14(b)(1). If the agency determines that the proposed action is "likely to adversely affect" listed

species or designated critical habitat, the agency must engage in formal consultation. *Id.* §§ 402.13(a), 402.14(a)-(b). By contrast, if the agency determines that its action will have "no effect" on a listed species or designated critical habitat, "the consultation requirements are not triggered." *Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 913 (9th Cir. 2018).

### B. The challenged 2020 Rule

The Service issued the Rule at issue in this litigation on August 31, 2020, *see* 85 Fed. Reg. 54,076 (Aug. 31, 2020), following a proposed rule the Service published in the Federal Register on April 9, 2020, 85 Fed. Reg. 20,030 (Apr. 9, 2020), and a 60-day public comment period. In total, the Rule opened or expanded hunting and fishing opportunities in 147 National Wildlife Refuges and National Fish Hatcheries. Specifically, the Rule opened hunting or sport fishing at nine units of the National Fish Hatchery system, opened eight Refuges previously closed to hunting and sport fishing, expanded hunting and sport fishing at 89 other Refuges, as well as opened 41 limited-interest easement National Wildlife Refuges in North Dakota for upland and big game hunting and sport fishing. 85 Fed. Reg. at 54,077.

Consistent with NEPA, the Service prepared initial EAs or categorical exclusions for each of the 147 Refuges and hatcheries. *Id.* at 54,081; *see also* ER-144 (complaint acknowledging that the "Service prepared environmental assessments pursuant to NEPA for most of the refuges that expanded hunting or

fishing"). The Service also prepared a Cumulative Impacts Report that concluded, after reviewing the collective impacts of all EAs and categorical exclusions, "that the [R]ule would not have significant impacts at the local, regional, or national level." 85 Fed. Reg. at 54,081. And consistent with the ESA, for each refuge that completed ESA Section 7 consultation, the Service concluded that the Rule was not likely to adversely affect any listed species. *Id.* at 54,082.

### C. Initial proceedings below and the district court's decision

CBD filed this lawsuit on November 29, 2021. ER-121. CBD challenges the Rule under the ESA and NEPA. *See* ER-168-173.

As to the ESA claim, CBD contends that the Service failed to adequately consider alleged impacts of the Rule on particular species in eight Refuges, specifically: the grizzly bear in Swan River Refuge, the Jaguar in Leslie Canyon Refuge, the Ocelot and Jaguarundi in Laguna Atascosa Refuge, the Audubon's crested caracara and wood stork in the Everglades Headwaters Refuge, the wood stork in St. Marks Refuge, and the whooping crane in Kirwin, Patoka, and Lacreek Refuges. ER-145-170. CBD also contends that the Service was required to undertake "programmatic consultation" on the Rule as a whole. ER-170; *see also* 50 C.F.R. §§ 402.02, 402.14(c)(4). As to the NEPA claim, CBD contends that the Service failed to take a sufficiently hard look at the cumulative impacts of increased use of lead authorized by the Rule. ER-171-173.

The Complaint requests, among other relief, an order directing the Service to complete programmatic consultations and adequate refuge-specific consultations, an order directing the Service to conduct updated NEPA analysis, as well as vacatur of the Rule and an injunction against the Rule's expansion of hunting and use of lead ammunition and tackle until the purported shortcomings CBD asserts are rectified. ER-173-174.

On February 4, 2022—shortly before the Service's response to the Complaint would have been due—the parties filed a joint motion to stay further proceedings. ER-117. The motion reported that the parties were engaged in settlement discussions and believed a settlement was possible. ER-118. The district court granted the motion and stayed the case until April 8, 2022. ER-115. On April 1, the parties filed a joint motion to extend the stay until June 7. The parties reported that they had exchanged settlement offers and remained hopeful the case would settle. ER-18. The court granted the motion on April 6, sua sponte extending the stay to July 5. *See* Dist. Ct. Dkt. No. 17.

On March 7, 2022, after the district court had entered its first stay, Proposed Intervenors—Safari Club International, the National Rifle Association of America, Sportsmen's Alliance Foundation, and the Rocky Mountain Elk Foundation—moved to intervene as Defendants as of right or, in the alternative, permissively. ER-

24-65.  The Service took no position on Proposed Intervenors' motion and CBD did not file a document taking any position.  ER-17.

In moving for intervention, Proposed Intervenors argued, among other things, that many of its members hunt and fish on lands that are part of the Refuge System and asserted other recreational and economic interests in such activities.  ER-35-38.  Proposed Intervenors further contended that the Service would not adequately represent their interests because the United States would perhaps not make the arguments Proposed Intervenors wish to make.  Specifically, Proposed Intervenors indicated their intent to "challeng[e] this Court's jurisdiction due to [CBD]'s lack of standing," arguments that Federal Appellees had not yet articulated (since they had not even responded to the Complaint) and in Proposed Intervenors' view would not "undoubtedly" make.  ER-46.  Proposed Intervenors submitted with their intervention papers a proposed motion to dismiss setting forth in more detail the arguments they would make if granted party status.  Dist. Ct. Dkt. No. 12-19.  Most of those arguments challenge CBD's standing to challenge the Rule on certain Refuges or to seek particular relief.  *See infra* p. 37.

The district court denied the motion to intervene on April 6 (the same day it granted the parties' motion to extend the stay).  ER-9-15.  The court noted that intervention as of right under Fed. R. Civ. P. 24(a) is warranted if the proposed intervention demonstrates that "(1) the application is timely; (2) the applicant has a

significant protectable interest relating to the subject of the action; (3) the applicant's ability to protect its interest may be impaired or impeded by the disposition of the action; and (4) the existing parties may not adequately represent the applicant's interest."  ER-10 (citing *Citizens for Balanced Use v. Montana Wilderness Association*, 647 F.3d 893, 897 (9th Cir. 2011)).  The court held that the intervention motion was timely (meeting the first intervention requirement) because "[n]o substantive developments have occurred in the case, and a briefing schedule has not yet been set."  ER-11.

But the court concluded that "the mere possibility that this lawsuit could lead to eventual limitations on hunting and fishing opportunities and access—limitations that were long the status quo—is insufficient to satisfy the" second requirement. ER-11.  As to the third requirement, the court held that the disposition of this lawsuit would not impair or impede Proposed Intervenors' ability to protect its asserted interest because even "[i]f the Fish and Wildlife Service's 2020 rule is revoked, the Hunting Coalition will have the opportunity to weigh-in during any comment period concerning future hunting and fishing access rulemaking."  ER-11-12.  As noted below, the Court did not separately address the adequacy-of-representation prong for intervention as of right.

The court also denied Proposed Intervenors' request for permissive intervention under Fed. R. Civ. P. 24(b).  ER-13.  On this point, the Court concluded

that Proposed Intervenors failed to show that Federal Appellees are "incapable or unwilling to make all available arguments in support of their common objectives, or that [they] will contribute some element necessary to the adjudication of this case that would otherwise be omitted." ER-13 (quoting *San Francisco Baykeeper v. U.S. Fish & Wildlife Service*, 2021 WL 3426961, at *7 (N.D. Cal. Aug. 5, 2021)). The court also noted that, although Proposed Intervenors emphasized their experience in environmental litigation, "Defendants are also steeped in experience with this type of case." ER-13. Finally, the court denied Proposed Intervenors' alternative request that they be granted *amici curiae* status, reasoning that this case involves record-based challenges under the ESA and NEPA, and any arguments Proposed Intervenors might make about hunting and fishing access and opportunities would be irrelevant to the extent they concern matters outside the administrative record. ER-14.

Proposed Intervenors timely appealed the denial of intervention. Proposed Intervenors challenge only the district court's denial of intervention as of right. Br. at 9. Proposed Intervenors' opening brief discusses the settlement posture of the case only briefly, and they do not appear to make any argument that intervention is warranted insofar as this case is settled rather than litigated. *See infra* pp. 26-27.

### D.    Subsequent developments

On June 9, 2022, the Service issued its annual proposed rule setting forth changes to hunting and fishing on the National Wildlife Refuge System. *See* 2022-2023 Station-Specific Hunting and Sport Fishing Regulations, 87 Fed. Reg. 35,136 (Jun. 9, 2022). The proposed rule would, among other things, open two National Wildlife Refuges for the first time that are currently closed to hunting and sport fishing, as well as open or expand hunting or sport fishing at 17 other Refuges. *Ibid.* The proposed rule further notes the Service's view that "lead is an important issue" and the "best available science, analyzed as part of this proposed rulemaking, indicates that lead ammunition and tackle may have negative impacts on both wildlife and human health." *Id.* at 35,137. Only one refuge is proposing to require non-lead ammunition and tackle as part of the proposed rule, and that refuge would not impose such a requirement until fall 2026; several other refuges have considered the phase out of lead ammunition and tackle and currently plan to propose a non-lead ammunition requirement in the 2026-2027 annual rule. *Ibid.* As with the 2020 Rule challenged by CBD, Proposed Intervenors could challenge any future rule once it is finalized, assuming they establish standing and the other usual prerequisites.

On June 27, 2022, the parties filed another motion to extend the stay, until October 5, 2022. Dist. Ct. Dkt. No. 20. The motion reported that the "parties are optimistic that they can settle this case, as they have reached a tentative agreement

in principle on key terms and will now turn to drafting the written settlement agreement and seeking necessary approvals." *Id.* at 2. The motion also reported that the Service expects to finalize the 2022-2023 annual rule—which it anticipates sending to the Federal Register by the end of September—and that extending the stay would give CBD an opportunity to determine if that future rule satisfies some of its litigation goals, which may further facilitate settlement of the case. *Id.* at 3. The district court granted that motion as well. Dist. Ct. Dkt. No. 21. Thus, the Service has not yet answered the Complaint, has not filed an administrative record, and no substantive activity in the case has otherwise occurred (or is likely to ever occur).

Following subsequent correspondence with undersigned counsel, Proposed Intervenors' counsel indicated that Proposed Intervenors would not agree to either a stay of this appeal, or an extension of time to file answering briefs (which would have allowed the parties to potentially share additional information about the settlement with Proposed Intervenors). In light of that position, and to avoid burdening the Court with unnecessary motion practice that would have to be resolved quickly, the Service has chosen to simply file its answering brief in this appeal. We note, however, that if the case does settle as expected, it would eliminate the asserted basis for Proposed Intervenors' intervention—as discussed below, all of Proposed Intervenors' intervention arguments are premised on a scenario in which

this case is litigated rather than settled. A settlement below would also at least raise a serious question whether this appeal is moot.[4] The Service will promptly notify this Court of any subsequent developments in the district court that are relevant to the disposition of this appeal.

## SUMMARY OF ARGUMENT

The district court's denial of intervention as of right should be affirmed.

1.     Proposed Intervenors are not entitled to intervene in this stayed case that is nearing settlement.

A.     Initially, Proposed Intervenors do not meet the protectable-interest prong of Rule 24(a)(2). Proposed Intervenors have no protectable interests in the parties' ongoing settlement negotiations and would have no power to either influence a settlement or prevent the parties from settling the case even if intervention was granted.

B.     For similar reasons, Proposed Intervenors also cannot show that, "as a practical matter," Fed. R. Civ. P. 24(a)(2), the disposition of this action may impair their interests. Any settlement agreement between the parties would not bind Proposed Intervenors and would have no effect on their ability to protect any rights they have under the Rule, since any repeal or modification of the Rule would itself

---

[4] *See, e.g.*, *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474-76 (4th Cir. 2015) (summarizing the courts' varying approaches to this question).

require notice-and-comment rulemaking. Indeed, Proposed Intervenors do not even contend that they want to intervene based on the settlement process—all of their arguments concern their supposed need to intervene if the case is litigated. In the unlikely event that happens, Proposed Intervenors are free to ask the district court to revisit its intervention decision. But the district court did not err in concluding that the likely disposition of this action by settlement would not impair Proposed Intervenors' ability to protect any interests they have in the 2020 Rule.

2. Even if this case were to proceed to briefing and a decision, Proposed Intervenors would not be entitled to intervene as of right because they fail to satisfy Rule 24(a)(2)'s inadequacy-of-representation prong.

A. Initially, Proposed Intervenors misstate the law governing the adequacy prong in this situation. A presumption of adequate representation arises where, as here, the Service through the Department of Justice would be defending its own agency action if the litigation proceeded on the merits. In that context, Proposed Intervenors must make a "compelling showing" of inadequate representation, and they do not come close to meeting that demanding standard. But presumption or no presumption, Proposed Intervenors at the very least must provide persuasive, case-specific reasons the United States would not adequately defend the Rule. This Court's case law does not support Proposed Intervenors' contention that an applicant satisfies the adequacy prong in a challenge to federal agency action whenever that

applicant has a different "perspective" than the United States—a standard that is almost entirely toothless. At the very least, litigation of this case in particular does not require Proposed Intervenors' perspective.

B.  Viewed under the proper standard, Proposed Intervenors cannot show inadequacy because they provide no reason the Service would not vigorously defend the Rule if the case goes forward. Proposed Intervenors note that the Service is negotiating a settlement with CBD, but this common practice does not show that the Service would inadequately defend the Rule if those settlement talks fail. And although Proposed Intervenors cite the Service's recent 2022 proposed rule, the Service's analysis in that proposed rule does not conflict with the challenged Rule and, in any event, does not suggest that the Service would fail to vigorously defend a Rule issued two years earlier based on a different administrative record.

C.  Finally, Proposed Intervenors argue at length that they meet the inadequacy prong because the Service will not "undoubtedly" make all of the arguments they would like to make. Initially, Proposed Intervenors' assertions about arguments the Service may or may not make is entirely speculative, and simply reflects Proposed Intervenors' own choice to attempt intervention before any substantive litigation activity has occurred (in a case that likely never will be litigated). But in any event, Proposed Intervenors' argument misunderstands the law, which does not require that an existing party will make all of the arguments an

19

intervenor would make and clarifies that mere differences of opinion about litigation strategy do not make an existing party's representation inadequate.

## STANDARD OF REVIEW

This Court reviews the district court's denial of intervention as of right de novo, except that timeliness (which is not at issue in this appeal) is reviewed for abuse of discretion. *Western Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

## ARGUMENT

An applicant seeking to intervene as of right must meet each of four requirements: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use*, 647 F.3d at 897 (quotation marks omitted). The district court correctly found that Proposed Intervenors did not meet the second or the third requirements. And even in the unlikely event that the existing parties actually litigate this case to a final decision, Proposed Intervenors have not satisfied the inadequacy-of-representation prong.

20

**I. Proposed Intervenors are not entitled to intervene in this stayed and likely soon to be settled case.**

Proposed Intervenors sought to intervene in a case that had been—and remains—stayed to facilitate settlement discussions, in which no substantive litigation activity of any kind had occurred, except for CBD's filing of the Complaint. Proposed Intervenors lack any protectable interest in this ongoing settlement process, and any settlement would not—indeed, could not—impair their ability to protect whatever interests they have in the Rule.

**A. Proposed Intervenors lack a protectable interest in the settlement process.**

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (quotation marks omitted). But "[a]n applicant generally satisfies the 'relationship' requirement only if the *resolution of the plaintiff's claims* actually will affect the applicant." *Id.* at 410 (emphasis added); *see also* Fed. R. Civ. P. 24(a)(2) (applicant seeking intervention as of right must show that applicant "is so situated that *disposing of the action* may as a practical matter impair or impede the movant's ability to protect its interest" (emphasis added)).

21

Here, CBD's claims are likely to be resolved—or in Rule 24's language, "dispos[ed] of"—via settlement. The only activities occurring in connection with this case in the district court—and likely the only activity that will ever occur—are settlement-related. Proposed Intervenors have no protectable rights in that process, whether or not they are granted party status.

Most obviously, Proposed Intervenors have no right to prevent CBD and the United States from voluntarily settling this litigation on terms that they deem satisfactory. "It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation." *Local No. 93, International Association of Firefighters, AFL–CIO v. City of Cleveland*, 478 U.S. 501, 528-29 (1986); *accord Southern California Edison Co. v. Lynch*, 307 F.3d 794, 806-07 (9th Cir. 2002) ("An intervenor does not have the right to prevent other parties from entering into a settlement agreement.").

Nor would Proposed Intervenors be able to block any settlement to which they object, or prevent dismissal of the case following any agreed-upon settlement. This is of course not a Rule 23 class action or other representative action and a settlement agreement thus would not even require court approval. "In ordinary non-class litigation, parties are free to settle their disputes on their own terms, and plaintiffs may voluntarily dismiss their claims without a court order." *Frank v. Gaos*, 139 S.

Ct. 1041, 1046 (2019). In short, Proposed Intervenors do "not have the right to prevent the [parties] from effectuating [their] reasoned judgment that it is best not to litigate the action." *Harris v. Pernsley*, 820 F.2d 592, 600 (3d Cir. 1987); *compare Tech. Training Associates, Inc. v. Buccaneers Ltd. Partnership*, 874 F.3d 692, 696 (11th Cir. 2017) (unnamed class members "have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered").

In addition, because the Service has not filed an answer, Proposed Intervenors could not even prevent CBD from unilaterally dismissing its own lawsuit without a court order if they were permitted to intervene. *See* Fed. R. Civ. P. 41(1)(A)(ii). Proposed Intervenors want to intervene to file a motion to dismiss, which the district court presumably would not decide when the preexisting parties are on the verge of settling the case. Even if Proposed Intervenors were to be granted intervention and attempt to interpose an answer, it is difficult to imagine that the district court would allow Proposed Intervenors in that scenario to prolong a lawsuit in which Plaintiffs and the Service have agreed to a resolution. In any event, Proposed Intervenors disclaim any such intent, *see infra* p. 27, and using intervention as a device to create adversity would not be appropriate, *cf. Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 97 (9th Cir. 1990) (Rule 24 not intended to "allow for the creation of whole new suits by intervenors").

**B.** **Any settlement between the preexisting parties would not impair Proposed Intervenors' ability to protect their asserted interests in the Rule.**

Since Proposed Intervenors have no protectable interests in the settlement process between CBD and the United States, there is an obvious corollary: any relevant protectable interests Proposed Intervenors do have in the Rule would not, as a practical matter, be impaired or impeded by any such settlement. CBD challenges only the 2020 Rule. And Proposed Intervenors thus seek intervention based on a claim that they have "a significant protectable interest in the 2020 Rule." Br. at 30. The Service could not modify or repeal that Rule simply by entering into a settlement agreement with a single interested party. Such a step would itself require notice-and-comment rulemaking. *See, e.g.*, *Consumer Energy Council of America v. FERC*, 673 F.2d 425, 446 (D.C. Cir. 1982) ("The value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal."); *Perez v. Mortgage Bankers Association*, 575 U.S. 92, 101 (2015) ("[T]he D.C. Circuit correctly read § 2 of the APA to mandate that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance.").

Regardless of how this litigation is resolved, if the Service in the future did issue a proposed rule that would modify or repeal any rights Proposed Intervenors

have in the 2020 Rule, Proposed Intervenors would have the same right: to comment on that hypothetical proposed rule, and to challenge any final rule in court, assuming they establish standing and other general prerequisites. *Cf. Sokaogon Chippewa Community. v. Babbitt*, 214 F.3d 941, 948-49 (7th Cir. 2000) (intervention properly denied because, although proposed intervenor alleged that the United States and the plaintiff had "managed to resolve their dispute by contracting around the rights and interests of the St. Croix," this was not a basis for intervention because "[i]f the Settlement Agreement is unlawful, as the St. Croix claims it is, it can bring a suit under the APA challenging as arbitrary and capricious the Secretary's ultimate decision").

Thus, as the district court aptly noted, "[i[f the Fish and Wildlife Service's 2020 rule is revoked, [Proposed Intervenors] will have the opportunity to weigh-in during any comment period concerning future hunting and fishing access rulemaking." ER-11-12.[5] And if the Service *did* enter into a settlement agreement

---

[5] Proposed Intervenors criticize this aspect of the district court's ruling, contending that their ability to participate in future rulemakings does not eliminate the impairment to their interests in the meantime if the 2020 Rule is vacated. Br. at 30-31. We read the district court here as referencing a scenario in which the Service *itself* seeks to replace the Rule, not one in which the court vacates the Rule. The district court was discussing a scenario in which the Rule was "revoked," not vacated, and the court cited a district court decision denying intervention because the relief requested merely involved initiation of a rulemaking process. *See San Francisco Baykeeper v. U.S. Fish & Wildlife Service*, 2021 WL 3426961, at *7 (N.D. Cal. Aug. 5, 2021). In any event, this Court can affirm on any ground supported by

with CBD that purported to itself vacate or modify the Rule—which, again, the Service is not going to do and recognizes that it cannot do—Proposed Intervenors could file their own suit challenging any such action as an impermissible end run around notice-and-comment requirements. Proposed Intervenors simply do not need to intervene in this action to protect their asserted interests from any settlement process.

Indeed, Proposed Intervenors do not appear to even contend that intervention is necessary to protect their interests from any settlement between the parties. They instead repeatedly argue that an adverse decision on the merits of Plaintiffs' claims could harm their interests because CBD seeks vacatur of the Rule (among other requested relief). *See* Br. at 3, 9, 18, 24, 29, 32. By contrast, Proposed Intervenors barely mention the ongoing settlement process at all, other than to note its existence. *Id.* at 7, 8, 11.[6] Similarly below, Proposed Intervenors asserted that CBD's "requested vacatur of the" Rule would impair its interests, ER-43, and that "resolving this case in the plaintiff's favor" would substantially affect their protectable hunting and fishing interests, ER-44; Proposed Intervenors did not contend that a settlement between the parties would substantially affect any

the record, and the Service would have to follow notice and comment procedures before replacing or modifying the Rule on its own initiative.

[6] Proposed Intervenors do assert that the existence of a settlement process raises doubts as to whether the United States would adequately represent their interests if the litigation proceeds; we address that argument below. *See infra* pp. 39–40.

protectable interest, and likewise did not suggest that they would have a right to participate in or shape any settlement even if they were granted party status. And in this Court, Proposed Intervenors recently denied "that [Proposed Intervenors] seek[] only to disrupt a potential settlement in the district court," and instead claim they want to defend the Rule if it is litigated on the merits. ECF No. 15 at 1 n.2.

Thus, Proposed Intervenors' appeal amounts to a claim that the district court should have granted them intervention based on a premise that the case will in fact be litigated to a decision on the merits. As discussed in the next section, intervention would still be unwarranted even on that assumption. But in any event, there is no reason to decide an intervention motion based on a hypothetical assumption that has no relationship to what will likely happen in a case. Rule 24 provides for intervention as of right when an applicant "is so situated that *disposing of* the action may *as a practical matter* impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphases added). Here, the action is likely to be "dispos[ed] of" via settlement and such a disposition would not impair Proposed Intervenors' ability to protect their interests in the Rule even in theory—but certainly not "as a practical matter." This Court has similarly emphasized that, in conducting the intervention as of right inquiry, "our review is guided primarily by practical considerations, not technical distinctions." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *see also Donnelly*, 159 F.3d at

409 (reviewing "practical and equitable considerations" bearing on intervention).

Here, the practical effect of allowing Proposed Intervenors into a case stayed for

settlement negotiations would be either nonexistent (if Proposed Intervenors adhere

to their statement disclaiming any desire to disrupt the likely settlement, *see* ECF

No. 15 at 1 n.2), or needlessly disruptive (if Proposed Intervenors sought to block a

settlement that would not bind them, or to file an answer and prevent the other parties

from dismissing the case).

To be sure, the contemplated settlement between the parties has not yet been

finalized and the Service thus acknowledges that it is *possible* the settlement will fail

and the litigation will go forward. But this is precisely the sort of "remote and

speculative" interest that does not warrant intervention. *See U.S. v. Union Electric

Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995). And if that unexpected scenario does occur,

Proposed Intervenors can ask the district court to revisit its intervention decision.

*See, e.g.*, *State v. U.S. Fish & Wildlife Service*, 262 F.3d 13, 21 (1st Cir. 2001)

(affirming denial of intervention while noting that "[t]his litigation is at its early

stages" and "the court should revisit the matter of intervention" should the

government's representation prove inadequate). But the district court correctly

analyzed these factors as applied to the case as it now exists.

## II.   Proposed Intervenors failed to show that the United States would not adequately represent their interests in the Rule if the case is litigated.

For the foregoing reasons, this Court should not consider this appeal now at

all and, even if it does, the relevant question is whether Proposed Intervenors have a protectable interest requiring them to intervene in the case in its current form—a case that is likely on the verge of settlement. Proposed Intervenors have no such interest. But even if this Court were to analyze the intervention questions on the likely counterfactual assumption that the case will be litigated, it should affirm the denial of intervention as of right because Proposed Intervenors failed to satisfy Rule 24's inadequacy-of-representation prong.

Initially, though the district court addressed adequacy of representation only as part of its permissive-intervention analysis (and Proposed Intervenors appeal only the district court's denial of intervention as of right), the Service agrees with Proposed Intervenors that this Court can and should address that issue in this appeal (if the Court winds up deciding this appeal). Br. at 32-34. The Service does not agree, however, with Proposed Intervenors' contention that the district court's analysis of adequacy was "stricter" than the adequacy prong of the intervention-as-of-right inquiry. Br. at 32 n.14. The question the district court asked—whether Proposed Intervenors had shown that the Government might be unwilling to make all available arguments in support of the Rule—is not meaningfully different than the standard Proposed Intervenors themselves suggest. And indeed, the standard the district court applied is if anything *less strict* than the proper standard under intervention as of right in that a presumption of adequacy applies to the

government's defense of its own regulations, and mere disagreements about litigation strategy (such as concerning which arguments to advance) are not sufficient to make representation inadequate. *See infra* pp. 30-31, 43-46. As discussed below, Proposed Intervenors failed to satisfy this prong.

### A. To warrant intervention, Proposed Intervenors must identify a specific and persuasive reason the Service may not adequately defend the Rule.

In analyzing the adequacy-of-representation prong here, two features of this case are important to understand. First, the underlying lawsuit is an ESA and NEPA challenge to a Service rulemaking, under which any review would be based solely on the administrative record and applicable law. And second, the interests Proposed Intervenors claim in this case derive entirely from the Rule itself, which the Service (through the Department of Justice) would be charged with defending if the litigation unexpectedly goes forward. *See* Br. at 9 ("[Proposed Intervenors have] significant protectable interests in the hunting opportunities opened or expanded by the 2020 Rule.").

This Court has repeatedly made clear that where, as here, an intervention applicant and an existing party share the same interest (such as defending a statute or regulation), there is a "presumption" that the existing party will adequately represent the applicant's interest. *See, e.g.*, *Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) ("This presumption of adequacy

30

is nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." (quotation marks omitted)); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006). ("Here, the ultimate objective for both defendant and intervenor-defendants is upholding the validity of Measure 26. Thus, a presumption arises that defendant is adequately representing intervenor-defendants' interests."); *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (similar analysis where both parties sought to uphold Proposition 187).

Other courts have reached similar conclusions. As a leading treatise explains, the principle that "representation will be presumed adequate unless special circumstances are shown" "is the controlling principle also when a governmental body or officer is the named party" and that "in the absence of a very compelling showing to the contrary, it will be assumed that the United States adequately represents the public interest . . . *in environmental litigation*, and in a variety of other matters." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 1909 (collecting cases for this proposition (footnote omitted) (emphasis added)). "There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

Both of these principles apply here.  If the litigation goes forward, the Service and Proposed Intervenors would have the same goal and interest:  to defend the Rule, while making all arguments they reasonably deem meritorious.  And the United States is charged with representing the interests of the public, including Proposed Intervenors and other alleged beneficiaries of its own Rule.  Under such circumstances, a presumption of adequate representation applies.[7]  Proposed Intervenors have not come close to making a "compelling showing" that the Service would not adequately represent their interests in defending the Rule.  Indeed, as discussed in the next section, the purported concerns they raise do not at all suggest that the Service would be unwilling or unable to vigorously defend its own Rule. *See infra* pp. 39-41.

---

[7] This conclusion is consistent with the Supreme Court's recent decision in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022).  In *Berger*, the Court held that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 2204.  But the Court made clear that it was not disturbing settled case law from this Court and others recognizing a presumption of adequate representation under these circumstances. *Ibid.* ("[W]e need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance.").  Indeed, the Court cited (without disapproving) a Fourth Circuit decision "endors[ing] a presumption of adequate representation where a member of the public seeks to intervene to defend a law alongside the government," *ibid*, which is closely analogous to the situation here.  The Court instead simply held that this presumption was inapplicable where, as in that case, "the legislative leaders are *among* those North Carolina has expressly authorized to participate in litigation to protect the State's interests in its duly enacted laws." *Ibid.*

But regardless of whether a formal "presumption" of adequate representation applies, Proposed Intervenors at the very least must offer *persuasive reasons* the Service may not adequately defend the Rule. Proposed Intervenors note that they—representing the specific interests of hunters and anglers—offer a perspective that is different from the Service (who represents the public at as a whole). Br. at 39-42. But by definition this is true in almost every case in which a movant seeks to intervene in a suit challenging federal agency action. This Court's case law requires a much more specific showing, such as a conflict or prior course of conduct demonstrating that the federal government's representation may be inadequate.

The cases Proposed Intervenors cite illustrate this point well. Take this Court's decision in *Citizens for Balanced Use*, on which Proposed Intervenors extensively rely. In that case, this Court found that the Forest Service's representation might be inadequate "where the Forest Service acted under compulsion of a district court decision gained by [proposed intervenors'] previous litigation" that the Forest Service was in the process *of appealing*. 647 F.3d at 899. Under these circumstances, the Forest Service and proposed intervenors had "fundamentally different points of view" about the litigation, with proposed intervenors wishing to argue that the challenged order was *statutorily required* and the Forest Service likely to argue only that the same order was mandated by a district court decision it was simultaneously seeking to overturn. *Ibid.*

Similarly, in *Legal Aid Society of Alameda Company v. Dunlop*, 618 F.2d 48, 50-51 (9th Cir. 1980), this Court remanded the district court's denial of the relevant intervention motion for further consideration because the United States' actions—taking a contrary position on a critical discovery issue and then withdrawing its appeal of a prior decision—suggested it might no longer adequately represent the proposed intervenor's interests. Similarly, in *Berg*, the defendant who the district court had suggested would adequately represent the proposed intervenor's interests—a city—acknowledged that it "will not represent proposed intervenors' interests in this action." 268 F.3d at 823 (quotation marks omitted)).

Proposed Intervenors also rely on *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011). Br. at 38 n.17, 40. But in that case, this Court held that the proposed intervenors were entitled to intervene because the Plaintiffs had requested unusually broad injunctive relief potentially affecting their downstream legal interests—such as contracts with federal agencies, as well as revenues from taxes and fees the proposed intervenors imposed on the use of federal public lands, which they then used to fund local school districts and various county functions. 66 F.3d at 1492, 1499. Because the Forest Service was "not charged with a duty to represent these asserted interests in defending against the issuance of an injunction," intervention was appropriate. *Id.* at 1499. By

contrast, here Proposed Interests' asserted interests—to exercise the hunting and fishing rights the Rule grants—are the same interests the Service would represent in defending its own Rule. The out-of-circuit authority Proposed Intervenors cite is easily distinguished on similar grounds.[8] This Court's case law thus does not support their argument that an applicant is entitled to intervene whenever it in some sense has a "perspective" that is different than the Government's, Br. at 35, 38—a sweeping proposition that would reverse the general presumption that the United States is an adequate representative when it is defending federal statutes and regulations.

But even assuming intervention might be warranted in *some* cases based solely on an applicant's differing "perspective," this case in particular does not lack Proposed Intervenors' perspective. Proposed Intervenors emphasize that the Service

---

[8] In *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986), the proposed intervenor had narrow interests not represented by the defendant, as well as specific concerns in the litigation—the severability of one section of a challenged statute and retroactive application of a decision invalidating that section—posing a potential conflict of interest with the District. In *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 972-74 (3d Cir. 1998), the Third Circuit recited the general principle that a "government entity charged by law with representing a national policy is presumed adequate for the task," but found a number of fact-specific circumstances—for example, several of the proposed intervenors had direct financial interests in the litigation, and the agency made a litigation decision in a companion case that "gave legitimate pause to the lumber companies' confidence in adequate representation by the Service"—warranting intervention. And in *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991), the court explained in detail why the differing interests of the state and putative intervenor were likely to generate different positions on specific arguments. None of those cases is at all analogous to this one.

must "defend the 2020 Rule through a lens representing broader public interests, instead of the Hunting Coalition's narrower and more parochial interests of the hunters and anglers who intend to take advantage of the expanded opportunities provided by the 2020 Rule." Br. at 39-40. But if this litigation does unexpectedly go forward, the Service's task in defending the Rule would not require it to balance varied interests; the Service already struck that balance when it issued the Rule. The Service would simply have to defend its own Rule as consistent with federal law and adequately supported by the administrative record. *Cf. Yazzie v. Hobbs*, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020) (denying intervention while noting that "simply defending the constitutionality of a law is different than defending a multi-faceted plan consisting of public and private interests"). Proposed Intervenors acknowledge this. *See* Br. at 38 ("Based on past experience, Federal Defendants will defend the 2020 Rule (assuming they defend it) on the administrative record."). But they insist that a focus on the administrative record omits "a necessary element that would otherwise be neglected—the perspective of the hunters and anglers who are the intended beneficiaries of the 2020 Rule." Br. at 38. But this is *not* a necessary element because the district court's review would be based solely on the administrative record and applicable law. *See, e.g.*, *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

Indeed, the specific arguments Proposed Intervenors evidently wish to advance in this case underscore that, notwithstanding any differing perspective they offer, they would not supply any missing but necessary element in this litigation. As noted above, Proposed Intervenors filed a proposed motion to dismiss in the district court detailing the arguments they would like to make (although their opening brief in this Court only briefly discusses that proposed motion). Most of the proposed motion was devoted to arguing that the district court lacks jurisdiction to entertain CBD's request for vacatur of the Rule as a whole because, according to Proposed Intervenors, CBD has only demonstrated standing to challenge the opening of fishing and hunting opportunities on eight Refuges, and many of CBD's alleged injuries are not redressable. Dist. Ct. Dkt. No. 12-19 at 5-15. Proposed Intervenors also argued that CBD failed to adequately allege injury from newly opened black bear hunting opportunities in Swan River Refuge (and that the District of Montana is not a proper venue for claims related to that Refuge), and made similar arguments concerning CBD's standing to challenge hunting opportunities on Leslie Canyon Refuge. *Id.* at 15-20.[9]

---

[9] In addition to these jurisdictional contentions, Proposed Intervenors briefly articulated two additional arguments that could be framed as either jurisdictional or merits-based. First, they asserted that CBD failed to adequately plead a section 7 ESA claim as to the whole Rule because CBD does not attempt to allege that the listed species identified in the Complaint are present in Refuges other than the eight Refuges the Complaint specifically discusses. Dist. Ct. Dkt. No. 12-19 at 22-23. Second, they contended that the NEPA claim should be dismissed to the extent it

Because the United States has not briefed this case on the merits—and probably never will—we express no opinion on those arguments here. But whatever one might think about these contentions, they are plainly not arguments as to which Proposed Intervenors have any expertise or experience that the Government lacks—nor are they arguments as to which Proposed Intervenors' perspective as hunters and fishers is even especially relevant. And no litigant has a *greater* incentive than the United States to ensure that Article III standing requirements are enforced in suits against the federal government, and that the limits of governing statutes (such as NEPA and the ESA) that allow for suit against the federal government are respected.

None of the foregoing is intended to disparage Proposed Intervenors. Proposed Intervenors may well have valuable insights on the issues presented in this litigation, just as many *amici* provide this Court and other courts valuable insights in particular cases.[10] But absent a persuasive reason to believe the Service's defense of the Rule would be *inadequate*, that perspective alone is not a basis for mandatory

---

purports to challenge the entire Rule because, according to Proposed Intervenors, the NEPA claim is an impermissible programmatic attack that is not cognizable under the APA. *Id.* at 23-25.

[10] The Service acknowledges that the district court also denied Proposed Intervenors leave to file an amicus brief. Although that decision was within the district court's discretion, the United States generally consents as a matter of course to amicus briefs that are timely filed and otherwise comply with court-specific rules. In the unlikely event this litigation goes forward, the Service would similarly consent to a renewed motion from Proposed Intervenors to file such a brief.

intervention.[11]  As explained in the next section, Proposed Intervenors identify no such reason here.

## B.  Proposed Intervenors do not identify any case-specific reason the Service may not adequately defend the Rule.

Judged under the proper standard, Proposed Intervenors cannot satisfy the inadequacy prong because they identify no specific basis for believing the Service's defense of its own Rule would be inadequate.

Initially, Proposed Intervenors assert that "the Service's participation in settlement discussions" with CBD "raises questions as to whether the Service's representation of the Hunting Coalition's interests *may* be inadequate."  Br. at 35. But this does not follow at all.  The fact that the Service is engaged in settlement discussions with Plaintiffs does not suggest that they would fail to make appropriate

---

[11] Proposed Intervenors also cite *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), for the proposition that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."  But although *Idaho Farm Bureau* does contain this language, the proposed intervenor in that case had to file a lawsuit to compel the agency to make a final decision on the proposed listing at issue in the case (and the Court also found on the facts of that case that the government would not be an adequate representative).  The Court's analysis does not extend to literally anyone who submits a comment on a rule (a category which, for some rules, would encompass hundreds of thousands or even millions of people and entities).  In any event, this language in *Idaho Farm Bureau* and the other cases Proposed Intervenors cite for this proposition are discussing only the first prong of the intervention as of right inquiry—whether the applicant has a protectable interest.  That principle— even if applicable here—does not resolve the question whether the Service's representation of any such interest would be adequate.

legal arguments in defense of the Rule if those negotiations fail and the case is litigated.[12]

Proposed Intervenors also assert (at 36-37) that the proposed 2022 rule calls into question the Service's ability to adequately defend the 2020 Rule.  Initially, this proposed rule (which the Service issued in June 2022) was not before the district court when it denied the motion to intervene.  In any event, Proposed Intervenors offer no persuasive explanation of how that proposed rule calls into question the Service's ability to vigorously defend the 2020 Rule.  Proposed Intervenors reference the statement in the proposed rule that "[t]he best available science . . . indicates that lead ammunition and tackle may have negative impacts on both wildlife and human health," with which it expresses disagreement.  But the

---

[12] Proposed Intervenors also suggest that it "seems doubtful that the Service will be willing to raise all potential arguments" because the Service stated in opposition to Proposed Intervenors' since-withdrawn motion to expedite this appeal that CBD "may simply decide not to pursue this case once it has an opportunity to view the Service's" 2022 rule; Proposed Intervenors then assert that it is unlikely CBD will withdraw this suit because "notwithstanding the Service's representations," the 2022 rule involves only one of the eight specific Refuges encompassed by CBD's complaint.  Br. at 36.  Respectfully, this logic is difficult to follow.  If Proposed Intervenors are saying that the 2022 proposed rule if finalized in its current form would not necessarily moot out all disputes over the 2020 Rule, the Service agrees and never suggested otherwise.  The Service's point was simply that there was no reason to expedite this appeal because—given this circumstance and others—the case might not go forward at all (a scenario that, given the parties' recent agreement in principle, is even more likely now than it was then).  This observation does not call into question the Service's ability to defend the Rule if the case unexpectedly does go forward.

2020 Rule similarly stated that the Service "share[d] the commenters' concerns about the adverse impacts of lead," noted that it continued "in these annual rulemakings . . . to phase out the use of lead on Service lands," and further pointed out that multiple stations prohibited or restricted lead under the Rule. 85 Fed. Reg. at 54,082. The Service nonetheless issued the Rule, stating, among conclusions, that at stations where it allowed lead ammunition and tackle, "the number of new hunters or anglers expected to use lead bullets or lead tackle as a result of the new or expanded opportunities is anticipated to be very low." *Ibid.*

Thus, not even Proposed Intervenors appear to squarely contend that the proposed rule's concern about the negative effects of lead is new or inconsistent with the 2020 Rule. *Cf.* Br. at 37 (stating "[i]f this is a new position of the Service's," but not arguing that it is in fact a new position). In any event, review of a challenged rule involves the agency's "*contemporaneous* explanation in light of the *existing* administrative record." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (emphases added). Even assuming there are subtle differences between the 2020 Rule approach and the 2022 rule approach, that simply reflects the fact that the Service issues a new rule each year. *See supra* p. 7. It does not call into question the Service's ability or willingness to defend its prior Rule, based on the record before the Service at that time.

41

### C. The Service is not required to demonstrate that it will make all of Proposed Intervenors' particular preferred arguments if the case is litigated.

That leaves Proposed Intervenors' broadest argument, which is that intervention is warranted because, in their view, the Service "will not 'undoubtedly' make or be capable and willing to make all" of their arguments. Br. at 35 (quoting *Citizens for Balanced Use*, 647 F.3d at 897). Essentially, as the United States understands Proposed Intervenors' argument, representation "may be" inadequate—and thus Rule 24's inadequacy-of-representation prong is satisfied—in any case in which the United States does not show at the outset of the case that it can and will make all of the arguments a proposed intervenor would make. This is clearly not the law (and cannot be the law), for several reasons.

For one, Proposed Intervenors' argument proves way too much. The principal reason Proposed Intervenors claim it is uncertain that the Service will make all of their arguments is simply because it is too early in the litigation to know what arguments the Service will make or not make (if the case is even litigated). *Id.* at 35 (stating that "[b]ecause the Service has not yet filed an answer or motion in response to the Center's Complaint, [Proposed Intervenors] and the Court do not know" how the Service would litigate the case). Even if the United States' failure to make particular arguments were sufficient to show inadequacy—which as discussed below, it is not—Proposed Intervenors' unsupported speculation would be

42

insufficient. *See California v. Health & Human Services*, 2017 WL 6731640, at \*8 (N.D. Cal. Dec. 29, 2017) (noting that "conclusory allegations that an existing party will not make certain arguments are insufficient to show inadequacy"). Here again, Proposed Intervenors advocate an intervention standard that is really no standard at all, and that would essentially require a court to grant intervention in any case where an applicant seeks to intervene in support of a defendant early enough.

In addition, under Proposed Intervenors' analysis, it does not matter whether the arguments they wish to make are strong arguments, weak arguments, or arguments with no merit at all (a question on which, again, the Service expresses no view here). Indeed, as noted above, although Proposed Intervenors submitted a proposed motion to dismiss below, their opening brief only briefly discusses the specific arguments they wish to make.

But more fundamentally, the premise of Proposed Intervenors' argument is simply incorrect. Adequacy of representation does not require that an existing party will make all of the arguments an intervenor would make. To the contrary, "mere differences in litigation strategy are not enough to justify intervention as a matter of right." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009). Courts have reiterated this principle time and time again. *See, e.g.*, *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 922 (8th Cir. 2015) (noting that, absent a "clear dereliction of duty," "the proposed intervenor cannot rebut the

presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing him"); *United States v. Territory of Virgin Islands*, 748 F.3d 514, 523 (3d Cir. 2014) (intervention not warranted where "[a]ny differences" proposed intervenor had with the government were "merely differences in strategy, which are not enough to justify intervention" (quotation marks omitted)); *U.S. v. City of New York*, 198 F.3d 360, 367 (2nd Cir. 1999) (the fact that "the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy" is not sufficient to warrant intervention); *Jenkins ex rel. Jenkins v. State of Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996) ("A difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation."); *Animal Legal Defense Fund v. Otter*, 300 F.R.D. 461, 465 (D. Idaho 2014) (the "fact that the State *may* take a more cautious, balanced approach as to issues related to federal preemption and whistleblower protection, is not a compelling showing that overcomes the presumption of adequate representation" (quotation marks and citation omitted)).

Similarly here, in the unlikely event this case is litigated, the Service and the Department of Justice will exercise their judgment and advance any arguments in defense of the Rule they reasonably deem meritorious and worth advancing. The law requires no more—and certainly does not require the Service to guarantee in

advance of any litigation that it will make all of the arguments Proposed Intervenors would make.

Urging otherwise, Proposed Intervenors point to language in *Citizens for Balanced Use* noting that it is relevant "whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments." 647 F.3d at 898. Proposed Intervenors misunderstand this language in multiple respects. For one, this language in *Citizens for Balanced Use* was part of a three-factor test, not an absolute requirement. Br. at 35; *see also California*, 2017 WL 6731640, at *8 (noting that this is "a factor the court examines in determining the adequacy of representation, but intervention is not automatically required every time this factor is not present"). But more fundamentally, even for purposes of this factor, the question is "whether the *interest* of a present party is such that it will undoubtedly make all the intervenor's arguments." 647 F.3d at 898 (emphasis added); *accord Southwest Center for Biological Diversity*, 268 F.3d at 824 ("It is sufficient for Applicants to show that, *because of the difference in interests*, it is likely that Defendants will not advance the same arguments as Applicants." (emphasis added)).

The relevant inquiry under *Citizens for Balanced Use* and other cases is thus whether an existing party's *interest might diverge* from that of a putative intervenor in a manner that would cause that party not to advance reasonable arguments in defense of their shared objectives—not that the Government must show that it will

literally make every argument a proposed intervenor would like to make (let alone that it make such a showing at the very outset of the case). That would not only be impossible in cases like this one, but would also conflict with the well-established principle that disagreements about litigation strategy do not make representation inadequate—which *Citizens for Balanced Use* reaffirmed. *See* 647 F.3d at 899 (noting that the factual situation in that case "represents more than a mere difference in litigation strategy, which might not normally justify intervention").[13] Because Proposed Intervenors failed to identify any persuasive reason the United States' representation may be inadequate, intervention is not warranted.

## CONCLUSION

For the foregoing reasons, the district court's order denying intervention as of right should be affirmed.

---

[13] Proposed Intervenors also rely on this Court's recent decision in *Western Watersheds Project*, for the proposition "that the identification of arguments not raised by existing parties demonstrated that existing parties did not adequately represent the proposed intervenor's interests." Br. at 37. *Western Watersheds Project* involved the question of whether a holder of oil and gas leases' interests were adequately represented by a regional trade association, a very different question than whether a federal agency can adequately represent a third-party's interest in defending its own rule. In any event, this Court found in that case that a party made a satisfactory showing of inadequate representation by identifying three at least reasonable arguments the regional trade association "*did not* raise before the District Court." 22 F.4th at 841 (emphasis added). That is of course quite different than what Proposed Intervenors are attempting to do here—premising intervention on speculation that the Service *might not* raise certain arguments if the case is even litigated at all.

Respectfully submitted,

s/ ANDREW M. BERNIE
TODD KIM
*Assistant Attorney General*
ANDREW C. MERGEN
ANDREW M. BERNIE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
(202) 514-4010
andrew.m.bernie@usdoj.gov

August 22, 2022
DJ# 90-8-6-08525

## STATEMENT OF RELATED CASES

Undersigned counsel is unaware of any cases in this Court that are related to this case within the meaning of Circuit Rule 28-2.6.

### Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**        22-35314.

     I am the attorney or self-represented party.

     **This brief contains 11,480 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

     I certify that this brief *(select only one)*:

[ X ]   complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;

    [] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   s/ *Andrew M. Bernie*

**Date**        August 22, 2022